IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARILYN HOOPER,

    Plaintiff,

    v.

CALNY, INC. dba TACO BELL; LENTZ FAMILY TRUST and DOES 1-20,

    Defendants.

CIV-S-03-0167 DFL/GGH

MEMORANDUM OF OPINION AND ORDER

Plaintiff Marilyn Hooper brought suit against defendant Calny, Inc., alleging disability access violations at the Taco Bell restaurant at 25th Street and Broadway in Sacramento, California ("the Taco Bell").  Following a one-day bench trial, the court ruled that the one of the restaurant's curb ramps violated the California Building Code and ordered Calny to correct this access violation.  (01/26/2005 Order.)  Hooper now moves for attorneys' fees and costs.

1

I.

In her complaint, Hooper alleged that the Taco Bell failed to conform to the accessibility requirements of the Americans with Disabilities Act ("ADA") and the California Building Code ("CBC").  (Compl. ¶ 2.)  Hooper initially identified twenty-four alleged access violations at the Taco Bell, and sought compensatory and punitive damages, injunctive and declaratory relief, and attorneys' fees and costs.  (Id.; Opp'n at 2.)

Calny moved for summary judgment on each of these twenty-four alleged violations.  In an order filed May 7, 2004, the court granted summary judgment in favor of Calny on sixteen of the alleged violations, denied summary judgment on another six violations, and found two of the alleged violations to be moot because Calny had corrected them prior to the summary judgment hearing.  (05/07/2004 Order.)

In the wake of the summary judgment ruling, Calny voluntarily modified three of the six remaining alleged access violations.  (Opp'n at 3.)  Specifically, it (1) increased the length of an access aisle, (2) lowered the height of an ordering counter, and (3) increased the turn-around space near the ordering counter.  (Id. at 9.)  A one-day bench trial was held on the three remaining alleged access violations: (1) the lack of adequate signs directing patrons to accessible entrances; (2) the steepness of the cross-slope and running slope of the public sidewalks; and (3) the steepness of the cross-slope and running slope of the curb ramp on Broadway.

2

The court ruled in favor of Calny on the adequate signage and sidewalk issues, but in favor of Hooper on her claim that the slope of the curb ramp violated the CBC, but not the ADA. (11/10/2004 Order.) However, because Hooper failed to show that the slope of the ramp made it more difficult for her to gain access to the restaurant on any of her visits or deters her from visiting the restaurant again, the court limited Hooper's potential remedies to injunctive relief and attorneys' fees. (Id. at 14.) After additional briefing by the parties regarding the appropriate remedy, the court ordered Calny to reduce the slope of the curb ramp from 9.3% to 8.3% percent by August 1, 2005. (01/26/2005 Order.)

On February 1, 2005, pursuant to Fed.R.Civ.P. 54(d) and 28 U.S.C. § 1920, Hooper filed a "Bill of Costs" with the court, requesting $5,340.60. Having received no opposition from Calny, the court granted Hooper's "Bill of Costs" on February 18, 2005.

Hooper now moves, pursuant to Cal. Civ. Code § 52(a), for attorneys' fees and additional litigation expenses. Specifically, she requests $55,105.50 in attorney, paralegal, and legal assistant fees, and $10,876.70 in additional litigation expenses and costs, for a combined total of $65,982.20.[1] (Mot. at 8; Reply at 2.) Calny does not challenge Hooper's right to recover attorneys' fees and litigation expenses as the

---

[1] Hooper originally requested $71,322.80 in attorneys' fees and costs. (Mot. at 2.) However, in her reply, she admitted that she had already received $5,340.60 of her requested litigation expenses as part of her Bill of Costs. (Reply at 2.)

3

"prevailing party" under § 52(a). Rather, it challenges the amount of the requested attorneys' fees and expenses on a number of grounds, arguing that Hooper is only entitled to $15,559.83.

II.

A. Attorneys' Fees

Hooper requests attorneys' fees only under Cal. Civ. Code § 52(a), the remedies provision of the Unruh Act. (Mot. at 2.) Accordingly, the award of attorneys' fees is governed by state law. See Champion Produce, Inc. v. Ruby Robinson Co., Inc., 342 F.3d 1016, 1024-25 (9th Cir. 2003) (holding that award of attorneys' fees is governed by state law where request for attorneys' fees is based on state substantive law); Crommie v. State of Cal., Pub. Util. Comm'n, 840 F.Supp. 719, 723-24 (N.D.Cal. 1994)(same).

As in the federal courts, the lodestar method is used in California to calculate attorneys' fees. Serrano v. Priest, 20 Cal.3d 25, 48-49, 141 Cal.Rptr. 315 (1977). Under this approach, the court must first determine a "lodestar" or "touchstone" figure, which is the reasonable hourly fee multiplied by reasonable hours. Greene v. Dillingham Constr., N.A., Inc., 101 Cal.App.4th 418, 422, 124 Cal.Rptr.2d 250 (2002). The court then has the discretion to increase or reduce the lodestar figure by applying a positive or negative "multiplier" based on a variety of factors.[2] Id. at 422.

---

[2] Some of the factors recognized under California law are: (1) the novelty and difficulty of the questions involved and the skill displayed in presenting them; (2) the extent to which the

4

Hooper requests $55,105.50 in attorneys' fees, based on the following hours and rates.

| Attorneys/Assistants | Hours | Rate | Total |
| --- | --- | --- | --- |
| Lynn Hubbard (attorney) | 143.10 | $265 | $37,921.50 |
| Lynn Hubbard (travel time) | 28.00 | $175 | $4,900 |
| Scott Hubbard (associate) | 49.80 | $175 | $8,715 |
| Paralegals | 23.71 | $75 | $1,778.25 |
| Legal Assistants | 27.55 | $65 | $1,790.75 |

(Hubbard Decl. ¶ 6.)

1.  Reasonable Hourly Rates

The reasonable hourly rate for a lawyer's services is the rate prevailing in the community for similar work. Shaffer v. Superior Court, 33 Cal.App.4th 993, 1002, 39 Cal.Rptr. 506, 512 (1995). Such a rate "reflects the skill and experience of the lawyer, including any relevant areas of particular expertise, and the nature of the work performed." Ackerman v. W. Elec. Co., Inc., 643 F.Supp. 836, 866-67 (N.D.Cal. 1986) (applying California law). The court "may consider the applicant's customary billing rates and the prevailing rates charged by attorneys of similar skill and experience for comparable legal

---

nature of the litigation precluded other employment by the attorneys; (3) the contingent nature of the fee award; (4) whether the fee award will fall ultimately on taxpayers because it is against the state; (5) whether the attorneys receive public or foundational funding to bring lawsuits of the type at issue; and (6) whether the fees would inure to the benefit of the organizations employing the attorneys rather than to the attorneys themselves. Serrano, 20 Cal.3d at 48-49.

5

1    services in the community." Id. at 867.  The relevant community
2    is generally the forum in which the district court sits.  Barjon
3    v. Dalton, 132 F.3d 496, 500 (9th Cir. 1997).

4    As noted in the chart above, Hooper's lead counsel, Lynn
5    Hubbard, requests rates of $265 per hour for himself, $175 per
6    hour for his associate, and $75 per hour for his paralegals.
7    However, judges in this district have repeatedly found that
8    reasonable rates for these types of cases are $250 per hour for
9    an experienced attorney, $150 per hour for associates, and $75
10   per hour for paralegals.  See, e.g., Loskot v. USA Gas Corp.,
11   CIV-S-01-2125 WBS KJM (E.D.Cal. Apr. 26, 2004); Loskot v. Pine
12   St. Sch., CIV. S-00-2405 DFL JFM (E.D.Cal. Nov. 7, 2002).  Hooper
13   provides no rationale for departing from these traditional rates.
14   Hooper's attorneys will be compensated according to district
15   practice at these traditional rates.

16   Mr. Hubbard also requests a rate of $175 per hour for his
17   travel time.  Reasonable travel time by an attorney during the
18   course of litigation may be compensable.  See Davis v. City of
19   San Francisco, 976 F.2d 1536, 1543 (9th Cir. 1992), modified on
20   other grounds, 984 F.2d 345 (9th Cir. 1993).  Defendants have not
21   challenged the rate requested, and the court finds the rate to be
22   reasonable.

23   Finally, Mr. Hubbard seeks a rate of $65 per hour for the
24   27.55 hours his legal assistants spent working on the case.
25   Hooper contends that courts have traditionally awarded costs of
26   legal staff in fee motions to the extent that costs can be traced

6

1  to a particular client. (Reply at 8.) Calny objects to such
2  fees on the ground that secretarial and clerical work falls under
3  the category of non-recoverable overhead. (Opp'n at 11.)
4      The court declines to grant any such fees here because
5  Hooper has failed to provide any basis from which to determine a
6  reasonable fee for such services. The prevailing party bears the
7  burden of producing satisfactory evidence of the appropriate
8  market rate. <u>Blum v. Stenson</u>, 465 U.S. 886, 895 n.11, 104 S.Ct.
9  1541 (1984). Here, Mr. Hubbard requests a rate for his legal
10 assistants that is essentially equivalent to the reasonable
11 paralegal rate. This rate is not reasonable, and Hooper has
12 provided the court with no other information from which a
13 reasonable rate can be determined. Accordingly, the court
14 declines to award fees for Mr. Hubbard's legal assistants.
15     2.  <u>Reasonable Hours Expended</u>
16     Mr. Hubbard submits documentation showing that his firm
17 spent 272.16 hours on this litigation. (Hubbard Decl. ¶ 6.)
18 This figure includes time spent by Mr. Hubbard, his associate
19 Scott Hubbard, the paralegals, and the legal assistants. Calny
20 does not object to the reasonableness of the hours spent by Mr.
21 Hubbard and his associate. However, Calny argues that Mr.
22 Hubbard should not be compensated at all for the 51.26 hours that
23 Mr. Hubbard's paralegals and legal assistants worked on this
24 case. (Opp'n at 11.) Calny asserts that these documented hours
25 were for clerical and secretarial tasks such as updating files,
26 updating calendars, serving documents, sending rote

correspondence, and making routine phone calls, and thus should be deemed non-recoverable overhead costs.  (Id.)

For the reasons discussed above, the court declines to compensate Hooper for the 27.55 hours spent on this case by Mr. Hubbard's legal assistants.  However, the 23.71 hours Mr. Hubbard's paralegals spent on this litigation are compensable. California courts allow compensation for time spent by paralegals and law clerks where the local practice is to bill clients for their services.  See Salton Bay Marina, Inc. v. Imperial Irrig. Dist., 172 Cal.App.3d 914, 951, 218 Cal.Rptr. 839 (1985); Sundance v. Mun. Court, 192 Cal.App.3d 268, 274, 237 Cal.Rptr. 269 (1987).  The paralegals' work on this case consisted primarily of communicating with Hooper, the court, and defense counsel and serving documents on various parties.  These are reasonable time entries for a paralegal, and the court finds them compensable.

3.  Reduction for Limited or Partial Success

Calny asks the court to reduce the amount of the attorneys' fee award by seventy to eighty percent based on Hooper's limited success.  Aetna Life & Cas. Co v. City of L.A., 170 Cal.App.3d 865, 881, 216 Cal.Rptr. 831 (1985); Beatty v. BET Holdings, Inc., 222 F.3d 607, 612 (9th Cir. 2000) (applying California law). Calny contends that Hooper only prevailed on one of the twenty-four alleged violations that she initially identified, and that her fees should be reduced accordingly.  (Opp'n at 6.) Calny further argues that the insignificance of the overall

8

relief warrants a significant reduction in the award of attorneys' fees. (Id. at 7-8.)

In response, Hooper argues that no reduction should be applied because her ADA and state-law claims are factually and substantively intertwined. (Mot. at 6.) Moreover, Hooper contends that, under the catalyst theory, she prevailed on more than just the one curb-ramp violation, given that her lawsuit caused Calny to fix voluntarily several of the other alleged access barriers. (Id. at 3-4.)

California courts have held that an attorneys' fees award should not be reduced where a plaintiff achieved her actual objectives, but failed on several of the legal theories. Sundance, 192 Cal.App.3d at 272-73. However, this rule does not prevent the reduction of the lodestar figure where a prevailing party is unsuccessful with regard to certain objectives of the lawsuit. Sokolow v. County of San Mateo, 213 Cal.App.3d 231, 249-50, 261 Cal.Rptr. 520 (1989).

In distinguishing between legal "theories" and "objectives," California courts have looked to the approach adopted by the United States Supreme Court in Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933 (1983). E.g., ComputerXpress, Inc. v. Jackson, 93 Cal.App.4th 993, 1018-19, 113 Cal.Rptr.2d 625 (2001). In Hensley, the Supreme Court ruled that where the plaintiff presents "distinctly different claims for relief that are based on different facts and legal theories," she cannot recover fees incurred in pursuing the unsuccessful claims. Hensley, 461 U.S.

9

at 434-35.  In contrast, if the plaintiff's successful and unsuccessful claims involve a common core of facts or related legal theories, the court should determine "the significance of the overall relief obtained by plaintiff in relation to the hours reasonably expended in the litigation."  Id. at 435.

Similarly, California courts look at whether the unsuccessful portions of the suit were factually or legally interrelated to the successful portion of the suit, or alternatively, whether the unsuccessful claims represent separate and unrelated objectives.  See Green, 101 Cal.App.4th at 423-24 (finding harassment and retaliation claim in employment discrimination suit to be sufficiently interrelated given that they were based on the same set of facts and course of conduct); Sokolow, 213 Cal.App.3d at 249-50 (distinguishing between legal theories and different objectives sought by the complaint).

Applying the above analysis to the present case, the court finds it appropriate to reduce the lodestar figure based on Hooper's limited success in this litigation.  Each of Hooper's twenty-four alleged violations represent different and unrelated "objectives" or "claims."  The alleged violations are premised on different facts and require the application of different sections of the ADA Accessibility Guidelines and the CBC to determine liability.

The court disagrees with Calny, however, that Hooper was successful on only one of her twenty-four claims.  Rather, the court finds that, based on the catalyst theory, Hooper was also

10

1  successful on the five violations that Calny voluntarily fixed.
2  To be considered a "prevailing party" under the catalyst theory,
3  a plaintiff must establish that

> (1) the lawsuit was a catalyst motivating the defendants to provide the primary relief sought; (2) that the lawsuit had merit and achieved its catalytic effect by threat of victory, not by dint of nuisance and threat of expense, . . . and, (3) that the plaintiffs reasonably attempted to settle the litigation prior to filing the lawsuit.

Tipton-Whittingham v. City of L.A., 34 Cal.4th 604, 608, 21 Cal.Rptr.3d 371 (2004).  While the catalyst theory is no longer a part of federal law, it remains a part of California state law. Id.

Calny does not deny that Hooper's lawsuit motivated it to fix these alleged violations.  Nor does it challenge Hooper's assertion that she tried to settle this case prior to filing the lawsuit.  Rather, Calny contends that the catalyst theory is inappropriate here because the fixing of these alleged violations was not the "primary relief sought" by Hooper in her lawsuit, given that these were just a few of the twenty-four alleged violations Hooper had identified.  (Opp'n at 9.)

The court finds that Calny provided Hooper with the "primary relief sought" for these alleged violations when it corrected them because that was the primary relief Hooper was seeking for those specific violations; it is irrelevant that Hooper also sought the correction of several other alleged violations.  To adopt Calny's interpretation of the "primary relief sought" requirement would run counter to the purpose of the catalyst

11

theory, which is to allow the award of attorneys' fees "even when litigation does not result in a judicial resolution if the defendant changes its behavior substantially because of, and in the manner sought by, the litigation." Graham v. DaimlerChrysler Corp., 34 Cal.4th 553, 560, 21 Cal.Rptr.3d 331 (2005).  Such a reading also runs counter to the rule in California that a plaintiff does not need to prevail on all of her claims to be considered a "prevailing party."  Sokolow, 213 Cal.App.3d at 243.

Accordingly, the court finds that Hooper was successful on six of her twenty-four claims, and that it is appropriate to reduce her lodestar figure accordingly.  Given that much of Mr. Hubbard's time entries cannot be easily divided between Hooper's successful and unsuccessful claims, the best approach is to reduce the lodestar amount by some percentage.[3]  See Californians for Responsible Toxics Mgmt. v. Kizer, 211 Cal.App.3d 961, 974-75, 259 Cal.Rptr. 599 (1989)(endorsing such an approach). Considering the limited number of claims Hooper prevailed on, as well as the fact that many of Mr. Hubbard's time entries -- for example, travel time -- would have been necessary even if Hooper had brought suit on only the six successful claims, the court finds that a fifty-percent reduction of the lodestar figure is reasonable.

---

[3] Calny suggests that the court reduce Hooper's award by different amounts for the different stages of the litigation based upon the relative success Hooper achieved at each stage of the litigation.  (Opp'n at 6.)  Given the difficulty of dividing the costs in such a fashion, the court finds it more appropriate to apply a single negative multiplier to the entire lodestar figure.

12

B.  Litigation Expenses and Costs

In addition to attorneys' fees, Hooper also seeks $10,876.70 in litigation expenses and costs.  (Reply at 2.)  Calny objects only to the following expenses.[4]

1.  Expert Witness Expenses

Hooper requests $8,599.10 for fees paid to three experts retained by her.  (Hubbard Decl. Ex. C.)  Calny challenges this request, contending that, under federal law, Hooper is limited to recovering expert witness fees in the amount of $40 per day for each day the witness attended a deposition or trial.  (Opp'n at 10.)  Under Calny's theory, Hooper would be limited to recovering only $80 for the cost of her experts -- $40 for Ms. D'lil's deposition testimony, and $40 for Ms. D'lil's trial testimony.  (Id.)

Unlike the calculation of attorneys' fees, federal law controls the assessment of costs, even in diversity cases.  Aceves v. Allstate Ins. Co., 68 F.3d 1160, 1167-68 (9th Cir. 1995); Chaparral Res., Inc., v. Monsanto Co., 849 F.2d 1286, 1291-92 (10th Cir. 1988).  Under federal law, except where express provision of costs and litigation expenses is made in another federal statute, a prevailing party is limited to recovering costs as explicitly enumerated under 28 U.S.C. §§ 1821 and 1920.  See Aceves, 68 F.3d at 1167-68 (refusing to allow

---

[4] Because Calny does not object to Hooper's other requested litigation expenses, the court has not independently considered them.

13

award of expert witness fees in excess of that allowed by § 1821(b)).

Because Hooper did not prevail on her ADA claim, she is limited to recovering the amount of expert witness fees allowed by §§ 1821 and 1920. Section 1920(6) provides for the compensation of court-appointed experts. Because Hooper's experts were not court appointed, she can only receive basic witness fees for her expert witnesses under 28 U.S.C. § 1821. 28 U.S.C. § 1920(3). Section 1821(b) limits witness fees to "an attendance fee of $40 per day" at a deposition or a trial, plus other travel expenses where applicable. Accordingly, Hooper can only receive as costs $40 for each day that the expert witness appeared at a trial or deposition, which in this case is $80.

Hooper maintains that she is entitled to all of her expert witness expenses because the fee-shifting provisions of Cal. Civ. Code § 52 supersede the limits of §§ 1821 and 1920. (Reply at 10.) This argument is not persuasive. The Ninth Circuit has noted some situations in which a state law that allows for the award of certain costs may supersede federal law restrictions on the awarding of such costs. Clausen v. M/V New Carissa, 339 F.3d 1049, 1064-65 (9th Cir. 2003). However, for the state provision to supersede federal law, the state law must contain an "express indication" that these costs were intended to be provided as damages for violation of the state law. Id. at 1065-66 (finding that plaintiff's expert witness expenses were not limited by § 1821 because a state statute, the Oil Spill Act, specifically

14

provided for "costs . . . of any kind" to prevailing plaintiffs).

Here, none of the state law provisions under which Hooper sued, including the Unruh Act, explicitly provide for the award of "costs." For example, § 52(a) of the Unruh Act, upon which Hooper relies, only provides for an award of attorneys' fees. Accordingly, Clausen is not applicable here.

The only way, therefore, for Hooper to receive these expert witness expenses is if California law allowed the award of such litigation expenses as part of the award of attorneys' fees. However, Hooper has not asserted this argument, nor could she, as California courts have held that out-of-pocket expenses of the type ordinarily billed to fee-paying clients, but not recoverable as statutory costs, may not be awarded as part of a reasonable attorney fee absent some express statutory language found in another California statute. E.g., Hsu v. Semiconductor Sys., Inc., 126 Cal.App.4th 1330, 1342, 25 Cal.Rptr.3d 82 (2005); Benson v. Kwikset Corp., 126 Cal.App.4th 887, 24 Cal.Rptr.3d 683 (2005); First Nationwide Bank v. Mountain Cascade, Inc., 77 Cal.App.4th 871, 877-78, 92 Cal.Rptr.2d 145 (2000); Ripley v. Pappadopoulos, 23 Cal.App.4th 1616, 1622-27 (1994). For the above reasons, Hooper is therefore limited to $80 in expert witness expenses.

2. Asset Search

Hooper seeks $550.00 for an asset report conducted on Calny. (Hubbard Decl. Ex. C.) Calny does not challenge Hooper's entitlement to this expense as a matter of law. Rather, Calny

15

argues that this search was unnecessary, and that Hooper should not be reimbursed for this expense, given the number of times that Mr. Hubbard has acted as counsel in actions against Calny. (Opp'n at 13.) The court finds that this expense was reasonable. Hooper was entitled to research whether removal of barriers at the Taco Bell was readily achievable, given that Calny's general denials and affirmative defenses put its financial status at issue. (Reply at 7.) Furthermore, although Mr. Hubbard has participated in litigation against Calny on prior occasions, a company's financial status can change significantly in short periods of time. Accordingly, the court allows compensation for this expense.[5]

### III.

Based on the foregoing discussion, Hooper is awarded $24,961.63 for attorneys' fees, calculated in the following manner:

///

///

///

///

---

[5] Calny also objects to two entries for reporter's transcript fees, arguing that these expenses should be excluded because they appear to be unrelated to the instant case. (Opp'n at 13-14.) However, these expenses were already awarded to Hooper as part of her Bill of Costs, to which Calny did not object, and Hooper makes clear in her reply that she is not requesting them again here. (Reply at 1.) Therefore, these costs are not before the court on this motion. Furthermore, the invoices for these transcripts show that they were related to this case. (Id. at 9.)

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Lynn Hubbard | 143.10 | $250 | $35,775 |
| Lynn Hubbard (Travel time) | 28.00 | $175 | $4,900 |
| Scott Hubbard (Associate) | 49.80 | $150 | $7,470 |
| Paralegals | 23.71 | $75 | $1,778.25 |
| **Sub-Total:** | | | $49,923.25 |
| Negative Multiplier (.5) | | | $24,961.63 |

Additionally, the court awards Hooper $2,397.60 in litigation expenses, which represents the amount Hooper requested minus all but eighty dollars of her requested expert witness fees. In sum, the court awards Hooper $27,359.23 in attorneys' fees and litigation expenses.

   IT IS SO ORDERED.

Dated: 4/22/2005

_(signature)_

_____
DAVID F. LEVI
United States District Judge

17